[No. B139452. Second Dist., Div. Three. May 31, 2001.]

ROBERT E. McCLELLAN, Plaintiff and Respondent, v. NORTHRIDGE PARK TOWNHOME OWNERS ASSOCIATION, INC., Defendant and Appellant.

**COUNSEL**

Geordan Goebel for Defendant and Appellant.

Fainsbert Mase & Snyder, Warren K. Miller and David G. Halm for Plaintiff and Respondent.

## Opinion

**KLEIN, P. J.**—Defendant and appellant Northridge Park Townhome Owners Association, Inc. (Northridge Park) appeals an amended judgment obtained by plaintiff and respondent Robert E. McClellan doing business as McClellan Design and Construction (McClellan) naming Northridge Park as an additional judgment debtor.

The essential issue presented is whether substantial evidence supports the trial court's determination naming Northridge Park as a party to the judgment. Because there is substantial evidence of Northridge Park's successor liability as a mere continuation of its predecessor corporation, the trial court properly exercised its jurisdiction under Code of Civil Procedure section 187[1] to add Northridge Park as a party to the judgment.

### Factual and Procedural Background

On October 10, 1996, McClellan, a licensed contractor, entered into a contract with Peppertree North Condominium Association, Inc. (Peppertree) to perform earthquake repair work on Peppertree's 76-unit condominium complex (the complex) located in Northridge, California. Peppertree failed to pay McClellan for the work.

1. *McClellan obtains arbitration award and judgment against Peppertree.*

McClellan commenced an arbitration proceeding against Peppertree to collect the amount due under the contract. Peppertree filed a $250,000 counterclaim, but failed to appear at the arbitration hearing. The arbitrator awarded McClellan a default arbitration award and denied Peppertree's counterclaim. The arbitrator awarded McClellan damages of $141,000 plus 10 percent interest and attorney fees and costs.

On June 15, 1998, pursuant to McClellan's petition to confirm the award, the superior court entered judgment in the amount of $171,685.56 against Peppertree.

2. *Peppertree's formation of Northridge Park as its successor corporation.*

On December 17, 1997, at a meeting of Peppertree's board of directors, a bankruptcy attorney recommended to the board that filing bankruptcy and

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

starting a new association was the best course of action, given Peppertree's debts.

On June 2, 1998, the board of directors of Peppertree caused the filing of articles of incorporation for Northridge Park, a new corporation, which immediately became the homeowners association for the complex. In addition, new covenants, conditions and restrictions (CC&R's) for Northridge Park were recorded with the county recorder.

### 3. *Peppertree files a bankruptcy petition, which is dismissed.*

On July 2, 1998, Peppertree filed a voluntary petition under chapter 7 of the United States Bankruptcy Code to avoid paying the judgment, as well as claims of other creditors.

In response, McClellan filed a motion to dismiss the bankruptcy case, stating the petition had been filed in bad faith. The motion alleged that approximately one month prior to filing the bankruptcy petition, the board of directors of Peppertree formed Northridge Park to collect dues, manage the property, and otherwise act as the same homeowners association, only under a different name.

The bankruptcy trustee recommended dismissal of the case and following a hearing, on April 14, 1999, the bankruptcy court granted McClellan's dismissal motion.[2]

### 4. *McClellan's motion to amend the judgment to add Northridge Park as a judgment debtor.*

Thereafter, McClellan filed a motion in the superior court to amend the judgment to add Northridge Park as a judgment debtor. The motion was made on the grounds that Northridge Park was merely a continuation of Peppertree and was created to hinder, delay and defraud Peppertree's creditors. McClellan presented evidence to show that "aside from the name, there is no difference whatsoever [between] [Peppertree] and Northridge Park. Northridge Park conducts the same business, collects the same revenues, operates through the same Board of Directors, has the same management company and presides over the same Condominiums, as did [Peppertree]."

---

[2]The bankruptcy trustee's dismissal recommendation stated it was "not economically feasible" to administer the Peppertree estate because any monies recoverable would be consumed by a Small Business Administration priority claim of almost $1.8 million. The record does not indicate any further activity by Peppertree in the bankruptcy matter. In any event, the merits of Peppertree's bankruptcy petition are not before us.

McClellan relied, inter alia, on Peppertree's CC&R's to show the purported formation of Northridge Park did not comply with the governing CC&R's, and therefore Northridge Park was merely a "shell" and was liable to Peppertree's creditors.

On January 14, 2000, following a hearing, the trial court granted the motion to amend the judgment. Based upon the evidence presented in the moving papers, the trial court found Northridge Park was the successor corporation to Peppertree and that good cause existed to grant the motion to amend.

The amended judgment was entered on February 4, 2000. On February 22, 2000, Northridge Park filed notice of appeal.

CONTENTIONS

Northridge Park contends: the trial court's amendment of the judgment to impose liability on an entity that was never a party to the action is clearly erroneous; no alter ego liability should attach because Northridge Park did not control the underlying litigation, and had no incentive to control the litigation if it could have; and McClellan's motion sought an improper remedy and was incompetently supported by inadmissible evidence.

DISCUSSION

1. *Appealability.*

As a preliminary matter, McClellan contends the appeal should be dismissed because the notice of appeal states the appeal is from the order granting the motion to amend the judgment, rather than from the amended judgment. McClellan argues that an order modifying a judgment, entered before judgment, is not a final and appealable order. The contention does not detain us.

The amended judgment was filed February 4, 2000. The notice of appeal was filed February 22, 2000. We construe the notice of appeal from the January 14, 2000 order granting the motion to amend the judgment as referring to the subsequent February 4, 2000 amended judgment (*Conservatorship of Starr* (1989) 215 Cal.App.3d 1390, 1393-1394 [264 Cal.Rptr. 80]), and proceed to address the merits of the appeal.

2. *Standard of review.*

The parties agree that in reviewing a trial court's order amending a judgment by naming an additional judgment debtor, an appellate court must

consider whether the trial court's findings are supported by substantial evidence. (*NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 776-777 [256 Cal.Rptr. 441].)

### 3. *Trial court's jurisdiction to amend judgment to name additional judgment debtor.*

#### a. *Section 187 statutory remedy and case law authorize amendment of judgment to add judgment debtor.*

■ Pursuant to section 187, a trial court has jurisdiction to modify a judgment to add additional judgment debtors. (*NEC Electronics Inc. v. Hurt, supra*, 208 Cal.App.3d at p. 778.) Section 187 grants to every court the power to use all means to carry its jurisdiction into effect, even if those processes are not set out in the code. (208 Cal.App.3d at p. 778.) Section 187 states: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

Utilizing section 187, judgments are typically "amended to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor. [Citations.] This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. [Citations.] 'Such a procedure is an appropriate and complete method by which to bind new individual defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit.' (1A Ballantine & Sterling, Cal. Corporation Laws (4th ed.) § 299.04, p. 14-45.)" (*NEC Electronics Inc. v. Hurt, supra*, 208 Cal.App.3d at p. 778; see, e.g., *Dow Jones Co. v. Avenel* (1984) 151 Cal.App.3d 144, 148-149 [198 Cal.Rptr. 457] [amending judgment by way of § 187 to add alter egos as judgment debtors].)

#### b. *Trial court may "disregard the corporate entity" as a means of exercising its jurisdiction.*

■ It is well settled that when a corporation "is used by an individual or individuals, or by another corporation, to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court

may *disregard the corporate entity* and treat the acts as if they were done by the individuals themselves or by the controlling corporation . . . the court will disregard the 'fiction' of corporate entity[.]" (9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 12, p. 524.)

Although Northridge Park contends no alter ego liability should attach because McClellan did not specifically invoke that theory in his motion to amend the judgment and the issue was not before the trial court, the doctrine of disregarding the corporate entity in appropriate situations is not that narrowly drawn.

Whether the theory relied on by the moving party and the trial court is alter ego, piercing the corporate veil, or some other challenge to the fiction of the corporate entity, the doctrine "limits the exercise of the corporate privilege to prevent its abuse. [Citations.]" (9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 12, p. 524.)

### c. *"Successor corporation" theory also available.*

Here, McClellan invoked section 187 to seek inclusion of Northridge Park as a judgment debtor on the ground it was a *successor corporation*, which was essentially the same entity as Peppertree, notwithstanding the fact Northridge Park has the trappings of a new homeowners association, with its own articles of incorporation and CC&R's.

McClellan's theory is consistent with the principle that "[i]f a corporation organizes another corporation with practically the same shareholders and directors, transfers all the assets but does not pay all the first corporation's debts, and continues to carry on the same business, the separate entities may be disregarded and the new corporation held liable for the obligations of the old. [Citations.]" (9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 19, p. 532.)

The general rule is "where one corporation sells or transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former unless (1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) *the purchasing corporation is merely a continuation of the selling corporation*, or (4) the transaction is entered into fraudulently to escape liability for debts. [Citations.]" (*Ortiz v. South Bend Lathe* (1975) 46 Cal.App.3d 842, 846 [120 Cal.Rptr. 556], italics added;

accord, *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28 [136 Cal.Rptr. 574, 560 P.2d 3];[3] *Franklin v. USX Corp., supra,* 87 Cal.App.4th at p. 621.)

Such a continuation of the predecessor corporation was shown in *Blank v. Olcovich Shoe Corp.* (1937) 20 Cal.App.2d 456 [67 P.2d 376]. In that case, the plaintiffs purchased stock in Olcovich Shoe Company. It later developed that the sale of the stock was unlawful. The company went into bankruptcy. During the proceedings, a new corporation, Olco Shoe Company, was organized and bought the assets from the trustee. The new company offered shares to the plaintiffs in proportion to their prior holdings, and thereafter changed its name to The Olcovich Shoe Corporation. (*Id.* at pp. 457-460.) In an action against the new company, it was held liable in damages for the acts of its predecessor in selling stock in violation of law. (*Id.* at pp. 460-461.) Citing the evidence of similarity of names, identity of directorate, purchase of assets and offer of stock to the old shareholders at a nominal value, the court held: "[C]orporations cannot escape liability by a mere change of name or a shift of assets when and where *it is shown that the new corporation is, in reality, but a continuation of the old.* Especially is this well settled when actual fraud or the rights of creditors are involved, under which circumstances the courts uniformly hold the new corporation liable for the debts of the former corporation. [Citations.]" (*Id.* at p. 461, italics added.)[4]

Thus, where the successor corporation is a mere continuation and hence liable for the acts of its predecessor, the liability of the new corporation may be enforced in an independent action, as occurred in *Blank v. Olcovich Shoe Corp., supra,* 20 Cal.App.2d 456. ▮ However, in the alternative, a motion pursuant to the procedural mechanism of section 187 enables the court to consider disregarding the corporate entity on any of several theories in order to add an additional judgment debtor.

---

[3]*Ray v. Alad Corp., supra,* 19 Cal.3d at page 34, disapproved *Ortiz v. South Bend Lathe, supra,* 46 Cal.App.3d 842, on other grounds. (*Franklin v. USX Corp.* (2001) 87 Cal.App.4th 615, 621 [105 Cal.Rptr.2d 11].)

[4]In discussing the mere continuation exception to the general rule of successor non-liability, the court in *Ray v. Alad Corp.* stated "California decisions holding that a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts have imposed such liability only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations. (See *Stanford Hotel Co.* v. *M. Schwind Co.* (1919) 180 Cal. 348, 354 [181 P. 780]; *Higgins* v. *Cal. Petroleum etc. Co.* (1898) 122 Cal. 373 [55 P. 155]; *Economy Refining & Service Co.* v. *Royal Nat. Bank of New York* (1971) 20 Cal.App.3d 434 [97 Cal.Rptr. 706, 49 A.L.R.3d 872]; *Blank* v. *Olcovich Shoe Corp.*[, *supra,*] 20 Cal.App.2d 456 . . . ; cf. *Malone* v. *Red Top Cab Co.* [(1936)] 16 Cal.App.2d 268 [60 P.2d 543].)" (*Ray v. Alad Corp., supra,* 19 Cal.3d at p. 29; accord, *Franklin v. USX Corp., supra,* 87 Cal.App.4th at p. 626.)

Once the trial court properly acquired jurisdiction of the matter before us by virtue of McClellan's motion to amend the judgment, section 187 enabled the trial court to utilize "any suitable process or mode of proceeding" to resolve the issue. Disregarding the corporate entity by finding successor liability was proper.

4. *Substantial evidence supports trial court's determination naming Northridge Park as an additional judgment debtor due to its status as Peppertree's successor corporation.*

The record reflects abundant evidence to support the trial court's determination that successor liability should attach to Northridge Park as Peppertree's successor.

a. *Formation of Northridge Park did not comply with Peppertree's CC&R's.*

Peppertree's CC&R's provided the CC&R's "may be amended only with the vote or written assent of members entitled to cast at least seventy-five (75) percent of the voting power of the Association."[5] That did not occur.

With respect to the term of the CC&R's, Peppertree's CC&R's stated: "This Declaration shall run with the land and shall continue in full force and effect for a period of fifty (50) years . . . . After that time, this Declaration and all [CC&R's] and other provisions shall be automatically extended for successive ten (10) year periods unless this Declaration is revoked by an instrument executed by owners and their respective institutional first mortgagees of not less than three-fourths (3/4) of the condominiums in the project and recorded in the Office of the County Recorder." There is no evidence that Peppertree's CC&R's had been duly revoked.

The Peppertree CC&R's also restricted transfer of association memberships. Article III, section 2, thereof provided in relevant part: "<u>Transfer of Membership</u>. The Association membership of each owner, . . . shall be appurtenant to the unit giving rise to such membership and shall not be

---

[5] With respect to amendment of CC&R's, Civil Code section 1355, subdivision (a), states: "The declaration may be amended pursuant to the governing documents or this title. Except as provided in Section 1356, an amendment is effective after (1) the approval of the percentage of owners required by the governing documents has been given, (2) that fact has been certified in a writing executed and acknowledged by the officer designated in the declaration or by the association for that purpose, or if no one is designated, by the president of the association, and (3) that writing has been recorded in each county in which a portion of the common interest development is located."

assigned, transferred, pledged, conveyed or alienated in any way, except on the transfer of title to the condominium and then only to the transferee of title to said unit. Any attempt to make a prohibited transfer shall be void." There was no showing the wholesale transfer of memberships from Peppertree to Northridge Park complied with this provision.

Instead, the evidence shows Peppertree purported simply to abandon its CC&R's and its very existence by forming a new incorporated homeowners association governed by a new set of CC&R's. That it cannot do. The effect of Peppertree's failure to disband properly is that notwithstanding the purported establishment of Northridge Park as a separate new entity, Northridge Park is essentially nothing more than the continuation of Peppertree under a different name.

### b. *Other indicia that Northridge Park was merely a continuation of Peppertree.*

The new entity, Northridge Park, was the homeowners association for the same condominium complex, whose membership consisted of the same unit owners. The same individuals served on the boards of Peppertree and Northridge Park. The same management company remained in place. Both Peppertree and Northridge Park derived their income from the homeowner dues assessed to the membership. There was no evidence that Peppertree had been dissolved or had wound up its affairs. This was compelling evidence presented by McClellan in support of his contention that Northridge Park was merely a continuation of Peppertree.

As stated in *Blank v. Olcovich Shoe Corp., supra*, 20 Cal.App.2d at page 461, "corporations cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old." Here, substantial evidence supports the conclusion that Northridge Park was a mere continuation of Peppertree. Therefore, the trial court properly imposed successor liability on Northridge Park for Peppertree's debt to McClellan.

### c. *Northridge Park's reliance on NEC Electronics Inc., is misplaced.*

In *NEC Electronics Inc.*, the plaintiff won a judgment against a corporation for nonpayment of goods, after defendant failed to appear at trial. The defendant corporation filed bankruptcy, and thereafter, the trial court granted plaintiff's motion to amend the judgment by naming the corporation's sole shareholder and chief executive officer as a judgment debtor on an alter ego theory. (*NEC Electronics Inc. v. Hurt, supra*, 208 Cal.App.3d at pp. 775-776.) The amended judgment was reversed on the ground there was insufficient evidence to show that said individual had the opportunity to litigate the

underlying action or that he controlled the defense of that action. (*Id.* at p. 781.)

Northridge Park contends the judgment should be reversed because, as was the case in *NEC Electronics Inc.*, it too lacked the opportunity to litigate the underlying action. However, in view of our finding that substantial evidence supports the trial court's ruling herein that Northridge Park was the successor corporation to Peppertree, Northridge Park's attempt to bring itself within *NEC Electronics Inc.*, is unavailing. As explained, Northridge Park was a mere continuation of Peppertree under a different name. Therefore, Northridge Park cannot be heard to complain that because it did not exist at the time the arbitration award was entered, its interests were not represented in the underlying action.

5. *Evidentiary issues waived.*

Northridge Park contends "McClellan's motion was 'supported' by a mis[h]-mash of incompetent evidence," that it properly objected to McClellan's proffered evidence, the trial court failed to rule on its evidentiary objections, and had the trial court properly sustained the objections, McClellan's motion would have been left without evidentiary support. In attacking the trial court's ruling, the opening brief states, inter alia: "Northridge Park noted that McClellan's declaration was incompetent, contained hearsay information, lacked foundation, and lacked personal knowledge, among other things." Given the conclusionary nature of the briefing, and its failure to explain in what manner the evidence is insufficient to establish Northridge Park's successor liability for the amount due on the judgment, the contention is waived. (*In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164 [238 Cal.Rptr. 12].)

## DISPOSITION

The amended judgment is affirmed. McClellan to recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 29, 2001.